FILED
2014 Aug-06  AM 11:04
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

SANDRA LOGAN,                            )
                                         )
          Plaintiff,                     )
                                         )
vs.                                      )          4:13-cv-1013-LSC
                                         )
CAROLYN W. COLVIN,                       )
Commissioner of Social Security,         )
                                         )
          Defendant.                     )

MEMORANDUM OF OPINION

I.    Introduction

The plaintiff, Sandra Logan, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB"). Ms. Logan timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Logan was forty-eight years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education. (Tr. at 27.) Her past work experiences include employment as machine operator and packer. (Tr. at 26.) Ms. Logan claims that she became disabled on January 4, 2010, due to chronic

obstructive pulmonary disease, bronchitis, asthma, osteoarthritis left shoulder, fibromyalgia, obesity, and rheumatoid arthritis. (Tr. at 22.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a

determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. (*Id.*) If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Logan meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 22.) He further determined that Ms. Logan has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's chronic obstructive pulmonary disease, bronchitis, asthma, osteoarthritis left shoulder, fibromyalgia, obesity, and rheumatoid arthritis are considered "severe" based on the requirements set forth in

the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ did not find Ms. Logan's allegations to be totally credible, and he determined that she has the following residual functional capacity: to perform light work with the following additional restrictions: to sit, stand, and/or walk for a cumulative total of 6 hours in a 8-hour day; she has no limitations with the upper right extremity; she can only do occasional climbing, balancing, kneeling, or crawling; she cannot work in extreme heat, cold, fumes, or gases; and she cannot work around unprotected heights or hazardous machinery. (Tr. at 23.)

According to the ALJ, Ms. Logan is able to perform her past relevant work. (Tr. at 26.) She was a "younger individual" on the onset date of the alleged disability, however, she is now "closely approaching advanced age" as both of those terms are defined in the regulations. (Tr. at 27.) She has a high school education. (Tr. at 144.) The ALJ determined the transferability of Plaintiff's skills was not at issue because Plaintiff's past relevant work was unskilled. (Tr. at 27.) Even though Plaintiff cannot perform the full range of light work, the ALJ used Medical-Vocation Rules 202.20 and 202.13 and a vocational expert's ("VE's") opinion as guidelines for finding that there are also a significant number of jobs in the national economy that she is capable of

performing, such as ticket seller, shipping and receiving warehouse weigher, and garment sorter. (Tr. at 27-28.) The ALJ concluded his findings by stating that Plaintiff has not been under a 'disability,' as defined in the Social Security Act" from the date of the alleged onset through the date of his decision. (*Id.*)

II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* " The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.' " *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir.

1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion

       Ms. Logan alleges that the ALJ's decision should be reversed and remanded for three reasons. First, she identifies what she believes to be inconsistencies and ambiguities in the ALJ's RFC assessment. (Doc. 10 at 1.) Second, Plaintiff contends that the effects of obesity, when combined with other ailments identified by the ALJ, "better comport with a sedentary RFC." (*Id.*) Third, Plaintiff argues that the ALJ did not fulfill his duty to develop the record. (*Id.*)

       A.    RFC Assessment

Plaintiff first contends that the ALJ's assessment that Plaintiff can "sit, stand, and/or walk for a cumulative total of 6 hours in an 8-hour day" is ambiguous. (Doc. 10 at 7).  She claims it is facially unclear whether the ALJ meant that the three activities could be performed for six hours each or whether the combined total for all three activities is six hours during an eight-hour workday. (*Id.*)

The ALJ is responsible for assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c).  Defects in an ALJ's opinion are not grounds for modifying an otherwise appropriate ruling unless the defects cause the ruling to be "inconsistent with substantial justice." *See* 20 C.F.R. § 498.224. The Court should apply a harmless error analysis when evaluating defects in Social Security rulings. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). The burden for showing whether a defect is harmful normally falls with the party challenging the agency's determination. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009.)

A review of the record as a whole shows that the ALJ's statement on Plaintiff's ability to sit, stand, and/or walk meant that Plaintiff could sit for six hours and stand and/or walk for six hours, thereby allowing Plaintiff to work an eight-hour workday. (*See* tr. at 48.)  In speaking to the VE, the ALJ stated, " . . . I find that [Plaintiff] has capability to stand and walk a cumulative total of six out of eight hours per day and to

sit for a cumulative total of six out of eight hours per day . . ." (*See* Tr. at 176.)
Although the ALJ's statement in Finding 5 could have been worded more concisely,
the record as a whole clears the ambiguity and thus renders harmless any error thereby
caused.

Plaintiff also avers that the ALJ's ruling is inconsistent because the restrictions
included in the ALJ's hypothetical to the VE were different from the restrictions in
his RFC assessment.  Inconsistencies are also subject to the harmless error standard.
*Diorio*, 721 F.2d at 728.   When the ALJ questioned the VE about Plaintiff's
employment opportunities, the ALJ used a hypothetical that included every restriction
that he would later include in his RFC assessment. (*See* Tr. at 23, 48.)  The ALJ also
included the additional restrictions of only occasional stooping and crouching and no
exposure to odors and poor ventilation, which had been opined by the state agency
non-examining physician, Dr. Heilpern, after he reviewed Plaintiff's medical records
in June 2010.  The VE responded that Plaintiff would still be able to perform her past
work, along with other light, unskilled jobs with an SVP of 2. (*Id.*) Although the ALJ's
hypothetical also included additional restrictions not later incorporated into his RFC
assessment, this is a harmless inconsistency because the VE testified that Plaintiff
could perform her past relevant work with these additional limitations.

Plaintiff further identifies an inconsistency based on the ALJ's exclusion of her knee ailments in his RFC assessment. (Doc. 10 at 7-8.) Plaintiff claims that although the ALJ acknowledged her August 2009 ACL tear and joint effusions, along with Dr. Heilpern's finding in June 2010 that she had crepitus in both knees, he failed to find that her knee impairment was "severe" at step two of the sequential evaluation. (Doc. 10 at 7.)

The ALJ has the duty of weighing inconsistencies in the record to determine whether a claim is credible. *See* 20 C.F.R. § 404.1520b. The ALJ took into account Plaintiff's knee problems, but he remarked that her medical records were silent on the knee injury for the twelve months following her August 19, 2009, magnetic resonance imaging ("MRI") scan. (Tr. at 24.) He also considered the report of Dr. Tenchavez, the one-time examining physician, whose May 2010 musculoskeletal evaluation did not reveal any "pain, restriction, or swelling on review of the joints." (Tr. at 173.) He also reviewed a pain questionnaire filled out by Plaintiff in April 2010 in which she failed to specifically identify knee pain. (Tr. at 133-34) (claiming that her pain is located "all over her body," feels similar to "the flu," and causes her legs to "tingle"). The foregoing evidence supports the ALJ's decision not to categorize Plaintiff's knee pain a severe impairment. Nevertheless, "[e]ven if the ALJ erred in

not indicating whether [a condition] was a severe impairment, the error was harmless becuse the ALJ concluded that [the claimant] had a severe impairment; and that finding is all that step two requires." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010).   The ALJ found other severe impairments in this case, satisfying his burden under step two.   The relevant question is the extent to which Plaintiff's impairments limit her ability to work.   *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).   After reviewing and discussing the evidence, including evidence related to Plaintiff's knees, the ALJ found Plaintiff could perform a range of light work.   (Tr. at 20-28.)   The ALJ properly considered the Plaintiff's knee pain claim and issued an opinion supported by substantial evidence.

In sum, none of Plaintiff's inconsistency claims are sufficient grounds to reverse, remand, or otherwise modify the ALJ's decision.

B.  Plaintiff's Obesity and the Light Work Assessment

Plaintiff argues that on its face the ALJ's RFC assessment "would better comport with sedentary work" presumably because the ALJ noted that all of Plaintiff's postural functions were limited to "occasional."   Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in

this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *See* 20 C.F.R. § 404.1567(b). An individual can still perform light work with occasional postural limitations.   As stated above, the VE testified that an individual with Plaintiff's RFC and additional limitations of occasional stooping and crouching, and no exposure to odors and poor ventilation, could perform past work as a machine operator and a packer.  (Tr. 47-48).

Plaintiff also claims that her obesity better comports with a sedentary RFC, thus making the ALJ's light work RFC erroneous. (Doc. 10 at 9-10.)  She claims that her obesity, when combined with her pulmonary impairments, " would reasonably reduce to RFC to below the exertional requirements of light." (*Id.*)

Obesity is not a listed impairment for the purposes of disability; however, Social Security Regulation 02-1p requires ALJs to consider obesity in the context of a claimant's overall condition. *See* SSR 02-1p.  This is because obesity is considered an exacerbating factor for other impairments that may affect a claimant's ability to function in a work environment. *See id.*  ALJs must" consider any additional and cumulative effects of obesity." *See* 20 C.F.R. § 404, Subp. P, App. 1.  Here, the ALJ classified Plaintiff's obesity as a " severe"  impairment, but he did not find that her

obesity was medically equivalent to any of the listed impairments. (Tr. at 22.)  To the extent that Plaintiff's pulmonary impairments equated a listing-level medical issue, "pulmonary function testing is required to assess the severity of the respiratory impairment once a disease process is established by appropriate clinical and laboratory findings." *See* 20 C.F.R. 404, Subp. P, App. 1, 3.00A.  Plaintiff's medical record indicates a history of COPD, asthma, shortness of breath, and chronic bronchitis. (Tr. at 149-54, 171.) Her pulmonary function test, however, revealed "essentially a normal pulmonary function study without appreciable obstructive or restrictive pulmonary disease." (Tr. at 185.) Although Plaintiff's subjective testimony was that she sometimes has difficulty breathing, the ALJ concluded that her pulmonary impairments, in consideration with the exacerbating effects of obesity, were insufficient to render a disabled verdict. (Tr. at 24-26.) Because the ALJ balanced all relevant evidence, properly considered the exacerbating effects of obesity, and supported his finding with the results from the pulmonary function test, his decision was proper. See *Lewis v. Comm'r of Soc. Sec.*, 487 F. App'x 481, 483 (11th Cir. 2012) (upholding and giving deference to ALJ's finding that obese, arthritic claimant had RFC to perform light work due to ALJ's substantiation with medical evidence.) Plaintiff has failed to show how her obesity or her condition in general caused

limitations beyond the limitations found by the ALJ. *See Moore*, 405 F.3d at 1213 n.6 ("the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard").

C. Development of the Record

Ms. Logan also argues that the ALJ failed to develop the record regarding her pulmonary impairments. Specifically, Plaintiff argues that the ALJ should have obtained a medical expert opinion or ordered a second consultative examination. She also argues that the ALJ should have recontacted Dr. Tenchavez, the one-time examining physician, for clarification of his opinion.

The ALJ has a duty to develop the facts fully and fairly and to probe conscientiously for all of the relevant information. *Ware v. Schwieker*, 651 F.2d 408, 414 (5th Cir. 1981). However, in all social security disability cases, the claimant bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding her impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty*, 245 F.3d. at 1278; 42 U.S.C. § 423(d)(5). Furthermore, social security regulations provide that "when the evidence [on record] . . . is *inadequate* for us to determine whether you are disabled, [the ALJ] will need additional information to reach a determination or a decision." 20 C.F.R.

§§ 404.1512(e), 416.912(e) (emphasis added).  Therefore, where the ALJ's findings are supported by evidence sufficient for a decision, the ALJ is not obligated to seek additional medical testimony.  *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).  An ALJ has many options, but no affirmative requirements, for settling an inconsistency or insufficiency in a claimant's medical record.  *See* 20 C.F.R. § 404.1520b.  He has the option to contact the treating physician, ask the claimant for addition records, request a consultative examination, or ask the claimant and/or others for more information.  *Id.*  The ALJ may exercise all or none of these potential remedies.  *Id.* He is not required to take any of those steps if he determines that weighing the available evidence will be sufficient.  *Id.*

Furthermore, Plaintiff must make a " clear showing of prejudice before it is found that the [plaintiff's] right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record."  *Graham v. Apfel*, 129 F.2d 1420, 1422 (11th Cir. 1997).  Thus, Plaintiff must show that the lack of a record created an evidentiary gap, resulting in unfairness or clear prejudice.  *See Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991) (finding that plaintiff was not prejudiced by a lack of representation because record did not contain any discernible evidentiary gaps).

Here, as noted, the only pulmonary function testing in the record was essentially normal without appreciable obstructive or restricted pulmonary disease. (Tr. 25, 185). Plaintiff reported that since 2000, she has constant pain all over her body, but there is no mention of these symptoms at her follow-up presentations to her treating physicians. (Tr. 25, 134). During the May 2010 consultative examination with Dr. Tenchavez, Plaintiff could heel, toe, tandem walk, stoop, and rise on her knees; and her straight leg raising test was negative in the sitting and supine position. (Tr. 24, 173). Plaintiff had no pain, restriction, or swelling on review on the joints; and she had normal breath sounds. (Tr. 24, 173). Plaintiff failed to show that the testimony of a medical expert or a second consultative examination was required for the ALJ to make an informed decision, and Plaintiff failed to show that she was prejudiced regarding the development of the record. To the contrary, substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled.

The ALJ was also not required to recontact Dr. Tenchavez. Dr. Tenchavez examined Plaintiff on May 26, 2010. Plaintiff mentions inconsistencies and ambiguities, but she has not identified anything inconsistent or ambiguous in Dr. Tenchavez's opinion. Dr. Tenchavez did not assess specific functional limitations in his report; however, Dr. Heilpern reviewed the record—including Dr. Tenchavez's

opinion—and opined that Plaintiff could perform a range of light work. (Tr. 24, 175-82).  Plaintiff had not demonstrated prejudice to the extent that the ALJ was required to further develop the record in any way.

IV.    Conclusion

    Upon review of the administrative record, and considering all of Ms. Logan's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

    Done this 6<u>th</u> day of <u>August 2014</u>.

_____
L. Scott Coogler
United States District Judge
[160704]